IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CARLINE KAY ROSS,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

        Defendant.

Case No. 6:16-cv-00903-AA
**OPINION AND ORDER**

AIKEN, Judge:

       Plaintiff Carline Kay Ross brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for an immediate award of benefits.

## BACKGROUND

In April 2013, plaintiff applied for DIB and SSI. Her applications were denied initially and upon reconsideration. On July 30, 2014, plaintiff appeared at a hearing before an administrative law judge ("ALJ"). At the hearing, plaintiff testified and was represented by an attorney. A vocational expert ("VE") also testified. The ALJ found plaintiff not disabled in a written decision issued on October 16, 2015. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less

than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since her alleged onset date of September 1, 2005. Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found that through the date last insured, plaintiff had the following severe impairments: "cervical spine degenerative disc disease; history of small bowel obstruction, status post laparoscopic ileostomy and colostomy and subsequent small bowel resection; insulin dependent diabetes mellitus; major depressive disorder; posttraumatic stress disorder (PTSD); borderline personality disorder; and somatoform disorder." Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). The ALJ additionally found that since plaintiff's date last insured she had the following severe impairments "[status post] left C7-T1 foraminotomy; cirrhosis; and status post left knee arthroscopy." Tr. 21–22. At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 22; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ found plaintiff retained the residual functional capacity ("RFC") to

> perform a reduced range of light work. She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk for 6 hours each in an 8-hour workday. She can frequently climb ramps and stairs but can only occasionally climb ladders, ropes, or scaffolds. She can frequently balance, kneel, and crouch and can occasionally stoop and crawl. She must avoid even moderate exposure to workplace hazards. She can understand, remember, and carry out simple, repetitive, routine tasks with occasional contact with the general public.

Tr. 24. At step four, the ALJ concluded plaintiff could not perform any of her past relevant work.

20 C.F.R. §§ 404.1520(a)(4)(iv), (f); *id.* §§ 416.920(a)(4)(iv), (f). At step five, however, the ALJ found that plaintiff could perform work existing in the national economy; specifically, plaintiff could work as a garment sorter, merchandise marker, and laundry subsorter. 20 C.F.R. §§ 404.1520(a)(4)(v), (g); *id.* §§ 416.920(a)(4)(v), (g). Accordingly, the ALJ found plaintiff not disabled and denied her applications for benefits.

## DISCUSSION

I.  *Plaintiff's Symptom Statements*

As a preliminary matter, the Commissioner argues that plaintiff waived this issue because she failed to preserve the issue on appeal, "as it was not raised whatsoever in plaintiff's counsel's brief to the Appeals Council." Def.'s Brief at 6 (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)). In *Meanel*, the claimant failed to introduce at the administrative hearing statistical evidence regarding the number of existing jobs. *Meanel*, 172 F.3d at 1115. The court in *Meanel* held that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Id.* Here, however, the issue now raised by plaintiff is a challenge to the ALJ's credibility determination. Because the ALJ does not make the credibility determination until she issues a written decision, this is an issue that by its very nature cannot be raised at the administrative hearing. Therefore, *Meanel* is inapposite.

The Commissioner also cites *Lamear v. Berryhill*. The court in *Lamear* held that an issue was not waived even though it was not raised at the hearing, because it was raised to the Appeals Council. *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017). *Lamear* stands for the proposition that the failure to raise an issue at the hearing can be remedied by raising it to the Appeals Council. *Id.* Here, plaintiff's challenge to the ALJ's determination could not be raised at the hearing, therefore there was no need to remedy such failure by raising the issue to the Appeals

Council. The Commissioner fails to articulate any argument regarding how *Lamear* applies to the present case. Although plaintiff's failure to raise the issue to the Appeals Council may not be preferable, in the absence of Ninth Circuit precedent, I will not take the drastic step of foreclosing judicial review by deeming plaintiff's arguments to be waived.

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).[1]

Plaintiff testified that she only has a seventh grade education and has not completed her GED. She sometimes lives in her car because her house has been foreclosed on, and even when she lives in her house it does not have working plumbing or electricity. Plaintiff explained that she used a cane because her physical therapist recommended that she use a walker or a cane. Plaintiff testified that she has had a great number of surgeries on her stomach, including a surgery in which a section of her small bowel was removed. Plaintiff also reported that she had been, and still was, suffering from a fistula, which manifested itself as "an open hole in [her] stomach" that "drain[ed] all the time." Tr. 56. At the time of the hearing plaintiff was scheduled to have her gall bladder

---

[1] Plaintiff asserts that the Court should apply SSR 16-3p to the credibility analysis, however, as clarified in a republication on October 25, 2017, SSR 16-3p is only applicable to ALJ decisions made on or after March 28, 2016. SSR 16-3p, 2016 WL 1119029, *13 n. 27 (Oct. 25, 2017). Here, the ALJ issued her decision on October 16, 2015; therefore, SSR 16-3p does not apply.

removed. Plaintiff also explained that she is allergic to almost all medications. Plaintiff often becomes emotional due to her impairments and she has tried to take her own life "many, many times." Tr. 62.

The ALJ found that plaintiff's "statements concerning the intensity persistence and limiting effects of [her] symptoms are not entirely credible[.]" Tr. 26. The ALJ did not find, nor does defendant argue, that plaintiff malingered. Given these facts, the ALJ was required to support the rejection of plaintiff's symptom testimony with specific, clear and convincing reasons. The ALJ gave seven reasons for discrediting plaintiff's claimed limitations: (A) plaintiff provided inconsistent statements; (B) plaintiff exaggerated her symptoms and her claimed impairments were not supported by the record; (C) plaintiff's conservative treatment undermined her subjective symptom testimony; (D) plaintiff's symptoms were effectively treated; (E) plaintiff used a cane which was not prescribed by any doctor; (F) plaintiff's memory was fallible; and (G) plaintiff's activities of daily living supported a finding that she was capable of greater work activities than alleged.

A. *Inconsistent Statements*

The ALJ found that plaintiff's subjective complaints were "inconsistent with other evidence, including the clinical and objective findings of the record." Tr. 26. Specifically, the ALJ found that although plaintiff said she quit working in September 2005, due to a motor vehicle accident, the medical evidence indicated that the claimant's motor vehicle accident did not occur until October 2005. The ALJ explained that "[t]he fact [that plaintiff] provided inaccurate information on matters so integral to determining disability suggest that much of what she alleged may be similarly unreliable." Tr. 27. This is not a clear and convincing reason to reject plaintiff's testimony because it fails to identify which symptom testimony is not credible. *Dodrill*, 12 F.3d at 918.

The ALJ also asserted that the motor vehicle accident was minor, as the airbag did not deploy, plaintiff was not taken to the hospital, and plaintiff was only diagnosed with a strain. Again, this is not a clear and convincing reason because the ALJ failed to specify which symptom testimony is not credible. *Dodrill*, 12 F.3d at 918. Furthermore, the medical records indicate that plaintiff's car accident was not minor. Dr. Jones noted that plaintiff had "sustained an intense front sided impact[]" and that plaintiff had a "dramatic bruise under the seatbelt from the left shoulder and across her chest." Tr. 440. Moreover, plaintiff "immediately had pain in her shoulder, neck, and back." *Id.* Four months after the car accident Dr. Keiper reported that plaintiff had been experiencing pain in her neck, shoulder, and arm since the accident, as well as pain in the lower back radiating into her left leg. At this point plaintiff was unable to rotate her shoulder without "severe pain." Tr. 362. Dr. Shapiro observed that plaintiff "scream[ed] in pain" when testing the rotation of her left shoulder and ultimately determined that plaintiff's shoulder pain was a "direct consequence of the [motor vehicle accident]." Tr. 430, 441. Dr. Kosek also concluded that plaintiff's "neuropathic arm and leg pain [were] a direct result of her [motor vehicle accident], and her need for continued treatment [was] relat[ed] to that accident." Tr. 703. Moreover, the ALJ incorrectly found that plaintiff was only diagnosed with a strain. Although plaintiff was diagnosed with a cervical strain, a left shoulder strain, and a low back strain, Dr. Kosek also diagnosed plaintiff with complex regional pain syndrome ("CRPS"). Accordingly, plaintiff's alleged inconsistent statements are not a clear and convincing reason to reject plaintiff's subjective symptom testimony.

B.  *Exaggerated Statements and Lack of Support in Medical Record*

Although the ALJ acknowledged plaintiff's history of gastrointestinal issues predating the surgical procedures performed in 1997, she found that after those procedures, plaintiff's treating provider "reported significant improvement and the records showed only one recorded instance of

abdominal pain between 1997 and 2005." Tr. 28. Plaintiff argues that the ALJ's findings with regard to her medical condition during the period from 1997 to 2005 were made improperly because those medical records were not part of the administrative record. *Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir. 1990) ("[I]t is erroneous to rely on items not in the record.") The ALJ did not rely entirely on items outside the record, because she refers to a brief summary of plaintiff's past medical history produced in 2005 that discusses several of plaintiff's hospitalizations and surgeries between 1997 and 2005. Nevertheless, it was neither fair nor reasonable to rely on the *absence* of contemporaneous reports of abdominal pain between 1997 and 2005 considering that plaintiff's medical records from that time period were not included in the administrative record. An extensive review reveals that almost the entirety of the medical record covers the time period from 2005 to 2015. Although there are a few records from 2003 through 2004, there are only second-hand references to the time period of 1997 to 2002. Therefore, it was improper for the ALJ to reject plaintiff's symptom testimony based on a lack of medical evidence regarding a time period that was scarcely discussed in the medical record.

The ALJ found that, in September 2005, plaintiff reported that since the 1997 surgery she had experienced large volumes of diarrhea up to 30 times per day; however, there is no basis in the record that such symptoms were contemporaneously reported. Again, the ALJ relies on the absence of medical evidence with regard to a time period that was only minimally discussed in the medical record. Furthermore, plaintiff did make contemporaneous reports of diarrhea, specifically, in August 2005, plaintiff reported 30-45 stools per day. The ALJ also relies on the fact that a few months later, plaintiff reported that her bladder and bowel functions were working normally. Although plaintiff did report that her bowel function was normal in February 2006, the record overwhelmingly demonstrates that between 2005 and 2015 plaintiff consistently suffered from diarrhea, abdominal pain, and incontinence. The ALJ may not merely cherry-pick isolated

inconsistencies with the objective medical record to discount a plaintiff's entire symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F. 3d 1195, 1205 (9th Cir. 2001)). Therefore, plaintiff's normal bowel function at one appointment in 2006 is not a clear and convincing reason for rejecting plaintiff's subjective symptom testimony.

The ALJ found that it was paradoxical that plaintiff did not lose weight despite her alleged frequent diarrhea. However, during a sixteen-month period from late 2010 to early 2012, plaintiff lost over 30 pounds. She subsequently lost nearly 20 pounds in a six-month period in 2013. Furthermore, in 2014, plaintiff was underweight to the extent that her treatment providers determined that she needed to gain weight before a necessary surgery could be performed.

The ALJ additionally noted that despite plaintiff's repeated claims of urinary and bowel incontinence, "she was never diagnosed with incontinence and such allegations are unsupported by the medical record, including [plaintiff's] reports of normal bowel function." Tr. 29. However, the medical record demonstrates that plaintiff was regularly suffering from incontinence. Moreover, Dr. Jones repeatedly assessed that plaintiff was suffering from chronic fecal incontinence.

The ALJ found that plaintiff's report of a fistula in December 2013 was unsupported by the medical record, and that in fact plaintiff merely had a stitch abscess. Contrary to the ALJ's finding, the record fully supports plaintiff's testimony regarding the fistula. Plaintiff was diagnosed with a fistula on multiple occasions, including in December 2013, when an ultrasound revealed a three-centimeter fistula. Furthermore, the fistula became a chronic problem for plaintiff. Plaintiff had to visit the emergency room several times due to ongoing bleeding from the fistula and she reported that it drained daily "with fluid described as clear, sometimes bloody, sometimes brownish." Tr. 2120. As of August 2015, the fistula remained unhealed.

With regard to plaintiff's knee pain, the ALJ found that "it was ultimately determined that [plaintiff's] subjective reports of knee pain were out of proportion and inconsistent with objective findings." Tr. 28. The ALJ's characterization of Dr. Kosek's opinion is not supported by the record. The doctor observed that plaintiff "does not have findings consistent with a radicular leg pain secondary to a lumbar spine issue." Tr. 665. Dr. Kosek's conclusion merely indicates that the pain in plaintiff's knee was not caused by a lumbar spine issue, not that he believed plaintiff's reports of knee pain were exaggerated. Therefore, the ALJ's mischaracterization of Dr. Kosek's opinion was not a clear and convincing reason to discount plaintiff's subjective symptom testimony.

The ALJ also cited an exaggerated neurological exam. Although Dr. Reid noted that "[a]t times, she seemed to be exaggerating her symptoms" of "left-sided weakness and head pressure," the doctor was equivocal as to her conclusions. Tr. 1252. Dr. Reid also indicated that it was possible that plaintiff was experiencing a migraine rather than neurological problems. Dr. Reid also noted that she was "very concerned about [plaintiff's] psychosocial stressors having significant part to play in this." *Id.* Accordingly, this was not a clear and convincing reason to doubt plaintiff's credibility.

The ALJ additionally found that although plaintiff "reported she was rushed to the hospital on several occasions in a comatose condition due to her diabetes, such allegations are unsupported by the medical evidence of record." Tr. 29. To the contrary, there is evidence in the record to support plaintiff's claim. On June 2, 2014, plaintiff was suffering from spikes in her blood sugar and she became lightheaded, passed out, and woke up in the emergency room.

The ALJ also found that although doctors suspected diabetic neuropathy, there was "no diagnostic testing to confirm those suspicions." Tr. 29. This reasoning is unpersuasive for two reasons. First, Dr. Jones did not merely suspect diabetic neuropathy, he concluded that plaintiff was

suffering from "diabetic peripheral neuropathy." Tr. 1952. Second, and more importantly, plaintiff never claimed to be suffering from diabetic neuropathy; therefore, the fact that diagnostic testing did not confirm its existence has no bearing on plaintiff's credibility.

The ALJ also found that plaintiff made unsubstantiated claims that she suffered from severe allergies to a number of medications, had been diagnosed with breast cancer, had tumors, had been given only six months to live and had a history of heart attacks. Plaintiff's medical records indicated plaintiff was indeed allergic to a multitude of prescription medications, including Aspirin, Atarax (hydroxyzine HCL), Codeine, Demerol, Erythromycin, Fentanyl Citrate, Flexeril, Glipizide, Glucophage, Hydrocodone, Hydroxyzine, Morphine, Nsaids, Oxycodone HCL, Penicillin, Percocet, Phenegran, Reglan, and Zithromax. There was also evidence that plaintiff had a tumor in her breast and Dr. Kosek indicated on multiple occasions that plaintiff had breast cancer.[2]

Nevertheless, plaintiff's claims about having been given six months to live and having a history of heart attacks appear to be unsubstantiated. In fact, plaintiff's "representative acknowledged that [plaintiff's] testimony about having a heart attack was untrue."[3] Tr. 25 (citing Tr. 355). The ALJ additionally relied on the fact that plaintiff reported she was diagnosed with cirrhosis around 1995; however, there is no medical evidence that she was diagnosed prior to 2013. Plaintiff's unsupported claims about having six months to live, having a history of heart attacks, and the existence of a 1995 diagnosis of cirrhosis constitute clear and convincing reasons for discounting her subjective symptom testimony.

---

[2] It appears that in April, 2012, Dr. Kosek was operating under the assumption that plaintiff's tumor was cancerous; however, the next month it was determined to be benign. Tr. 658, 881.

[3] Plaintiff alleges that she was referring to a "near code situation where she was over narcotized." Tr. 355. Regardless of the fact that plaintiff did at one point experience a "near code situation," it is still a substantial exaggeration to characterize such an experience as a history of heart attacks.

Plaintiff argues that the "medical record is extremely complicated," plaintiff has only a seventh grade education, and "the record clearly documents her difficulty recalling and relaying her own medical history." Pl.'s Brief at 14. Plaintiff insists that there is no clear and convincing evidence that she *intentionally* exaggerated her testimony. However, neither the regulations nor the case law require that exaggerations be intentional in order to undermine the reliability of subjective symptom testimony. Plaintiff's reasoning is unpersuasive because if a claimant's testimony is shown to be exaggerated and unsupported by the record, that claimant is equally unreliable whether the exaggeration was intentional or a result of confusion or memory impairment.

C. *Conservative Treatment*

The ALJ found that "[d]espite [plaintiff's] allegations of severe limitations and debilitating physical symptoms, she often failed to follow through with her doctor's referrals and treatment recommendations for several months or years." Tr. 30. Evidence of conservative treatment "is sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ found that although plaintiff's "treating providers recommended she engage in physical therapy, she failed to follow through for a year." Tr. 27. The ALJ found that plaintiff did not begin physical therapy until September 2006, despite the fact that she experienced a motor vehicle accident in October 2005. However, the record indicates that plaintiff began physical therapy in early November 2005, less than a month after the accident. Therefore, this is not a clear and convincing reason to discount plaintiff's subjective symptom testimony.

The ALJ also found that plaintiff "at times cho[se] to discontinue her medication against medical advice." Tr. 29. Plaintiff acknowledges "some compliance issues" with regard to diabetes. Although conservative treatment can undermine allegations of debilitating pain, it "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking

more aggressive treatment." *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008). There is ample evidence in the record that plaintiff was unable to maintain compliance with her diabetes medication due to lack of insurance and inability to pay. Inability to afford treatment is a good reason for not seeking more aggressive treatment. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Additionally, plaintiff was allergic to a great number of medications and there is evidence that she was, at times, not compliant with her diabetes medication because of reactions to the medication. In fact, two of plaintiff's diabetes medications—Glucophage and Glipizide— caused adverse allergic reactions and had to be discontinued. Accordingly, plaintiff's periods of noncompliance with her diabetes medication do not constitute a clear and convincing reason for rejecting her subjective symptom testimony.

D.    *Effective Treatment*

The ALJ found that when plaintiff had a spinal stimulator implanted in 2007 to treat her nerve pain, she reported great improvement. Although plaintiff reported great improvement in her pain several days after the surgery, it is clear that she was not referring to her nerve pain, rather she was referring to the pain from the surgery itself. Furthermore, at the appointment where plaintiff reported improvement in the pain from her surgical wounds, she additionally reported pain in her neck, arm, back, and leg. Plaintiff continued to report nerve pain over the next several years. In April 2012, plaintiff had the stimulator removed because it exacerbated her knee pain and sent shooting pain down her leg. The ALJ additionally relied on plaintiff's 2012 statement that she was in "virtually no pain." Tr. 27 (citing Tr. 659). However, despite plaintiff experiencing "virtually no pain" at the 2012 appointment, the pain returned shortly thereafter. Plaintiff's pain not only persisted, but thereafter continued to get worse. She also suffered from left-sided numbness, spasms, and weakness.

Due to her worsening pain, plaintiff underwent a C7-T1 foraminotomy in 2013. The ALJ

found that as a result of the foraminotomy, plaintiff "reported significant relief from her left arm pain." Tr. 27 (citing Tr. 1087). The record reflects that plaintiff's relief was short-lived. While she "had originally felt a significant amount of relief from her left arm pain post-operatively," she used her left arm to catch herself from falling off the bed and she "experienced worsening left arm pain[.]" Tr. 1087. Plaintiff also had a fall and reported that her "left arm is feeling more and more like it did prior to surgery." *Id.* Additionally, after the surgery, plaintiff was experiencing shoulder and neck pain. Regardless of any initial relief provided by the foraminotomy, plaintiff continued to suffer from pain in her neck, shoulder, back, arm, and leg. Therefore, the effective treatment of plaintiff's pain is not a clear and convincing reason for discounting her subjective symptom testimony.

E. *Unprescribed Use of Cane*

The ALJ found that plaintiff used a cane that was not prescribed. In discrediting a plaintiff's testimony, an ALJ may consider the use of a non-prescribed aide, such as a wheelchair or a cane. *See Chaudhry v. Astrue*, 688 F.3d 661, 671–72 (9th Cir. 2012). Although the ALJ noted that plaintiff's "examinations consistently revealed a normal gait" and the ability to walk without an assistive device, Tr. 28, the record reflects that she reported frequent falls and that she underwent physical therapy because of this problem. Even during times in which plaintiff's gait was normal, she still reported falls and difficulties with balance. *See* Tr. 1542 (Dr. Jones explained that plaintiff's "gait seem[ed] to be steady at [that] point, although she [did] have falls"). The ALJ also found that there was no objective evidence of plaintiff falling. However, at one of plaintiff's appointments, the treatment provider reported that plaintiff went to the restroom and was later found on the floor unable to remember what happened. Additionally, plaintiff presented at appointments with injuries due to her falls. *See* Tr. 1456 (plaintiff fell on her left shoulder and Dr. Jones noted tenderness); Tr. 1820 (plaintiff "came in today with scrapes on her hands and several

gashes on her right leg due to falling last night"). The ALJ disregarded such reports due to plaintiff's statement to her mental health provider that her "bruises and frequent falls were a result of abuse by her granddaughter, rather than any physical condition." Tr. 28 (citing Tr. 1854). However, the ALJ mischaracterized the record. Plaintiff never stated that the injuries attributed to her falls were actually due to her granddaughter's abuse, in fact she did not even mention her falls at all. Plaintiff merely reported that at the time of that appointment, in 2015, her granddaughter had been abusing her; yet plaintiff had been experiencing abnormalities with her gait since 2010 and difficulties with her balance since at least 2012.

Furthermore, the medical records indicate that although plaintiff was not prescribed a cane, she was, in fact, prescribed a walker. *See* Tr. 1186 (Plaintiff was being "set up for a hemi-walker to use to enhance safety at home."); Tr. 1966 ("Physical therapy has recommended she use a walker. She has had a number of falls."). Accordingly, plaintiff's use of a cane was not a clear and convincing reason to discredit her testimony.

### F.    *Fallibility of Plaintiff's Memory*

The ALJ additionally found that because plaintiff's hearing testimony was "nearly six years after the date last insured and more than ten years after her alleged onset date" plaintiff's ability to recall her medical history had "been subjected to the fallibility of memory." Tr. 26. The ALJ relied on the concerns of a number of medical providers that plaintiff was not providing accurate information about her medical conditions. Plaintiff argues that to the extent that she is a poor historian and has provided inaccurate history, it is due to her mental impairments. Plaintiff cites a number of medical providers that noted her inability to accurately recount her medical history. However, as the Commissioner contends, plaintiff's "admission that she was a poor historian shows that she is not a reliable source[.]" Def.'s Brief at 11. Whether plaintiff's inaccurate recounting of her medical history is due to intentional deception or memory deficiencies, the end

result is that the testimony based on her recollection of her medical history is demonstrably unreliable. Therefore, this is a clear and convincing reason to discount plaintiff's subjective symptom statements. Nevertheless, plaintiff's lack of credibility with regard to her ability to recount her medical history does not undermine the reliability of her statements to her providers about her contemporaneous symptoms.

### G. *Activities of Daily Living*

The ALJ found that plaintiff's daily activities supported the RFC determination. However, the Commissioner concedes that the ALJ erred with regard to activities of daily living. Accordingly, this is not a clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### H. *Harmless Error*

I find that plaintiff's alleged inconsistent statements, conservative treatment, unprescribed use of a cane, and activities of daily living were not clear and convincing reasons for rejecting plaintiff's symptom testimony. However, these errors are harmless because the exaggerated statements, lack of medical evidence, and fallibility of plaintiff's memory constitute clear and convincing reasons to discredit plaintiff's symptom testimony. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (the ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld). In sum, the ALJ provided clear and convincing reasons to discount plaintiff's symptom testimony.

## II. *Medical Opinion Evidence*

Plaintiff argues that the ALJ improperly rejected the medical opinions of Dr. Jones, Dr. Shapiro, Dr. Kosek, Dr. Luginbuhl, and Ms. Coppola. There are three types of medical opinions that have been categorized in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan*, 246 F.3d at 1201–02. "Generally, a treating physician's opinion

carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; 20 C.F.R. § 404.1527(d). Where there is a conflict between two medical opinions, the ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202. Medical opinions may address both the nature of the plaintiff's limitations and the ultimate issue of disability, *i.e.*, whether the plaintiff is capable of any work, given her limitations. *Id.* Although the ultimate decision regarding disability is reserved to the Commissioner, the rules governing consideration of medical opinions apply with equal force to opinions on the ultimate issue of disability. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Non-acceptable medical sources are commonly categorized as "other sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An ALJ may discount testimony from other sources if the ALJ gives germane reasons for doing so. *Id.* Because Qualified Mental Health Professionals ("QMHP") are defined as "other sources," they are not acceptable medical sources, and are thus entitled to lesser deference. 20 C.F.R. § 404.1513(d) (2013); *Molina*, 674 F.3d at 1111; *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1222 (D. Or. 2015). The ALJ need only give germane reasons to discount such opinions. *Molina*, 674 F.3d at 1111. Germane reasons to discount opinions include inconsistency with an opinion provided by an acceptable medical source and internal inconsistencies within the opinion. *Robinson v. Berryhill*, 690 F. App'x 520, 524 (9th Cir. 2017) (unpublished); *see also Molina*, 674 F.3d at 1111–12.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he consistency of the medical opinion with the record as a whole" is a relevant

consideration in weighing competing evidence. *Orn*, 495 F.3d at 631.

A.    *Treating Physician Brian Jones, M.D.*

Dr. Jones repeatedly indicated in his treatment notes that plaintiff was unable to work. Dr. Jones wrote a letter stating that plaintiff's medical impairments have prevented her "from working since 2005." Tr. 977. In 2014, Dr. Jones reported that plaintiff suffered from "chronic abdominal pain with fecal incontinence," fistulas, chronic neck pain, and chronic kidney stones. Tr. 1171. Dr. Jones determined that plaintiff could only stand for two hours and sit for four hours of an eight-hour day. He also concluded that plaintiff would miss more than two days per month due to her chronic abdominal pain and fecal incontinence.

The ALJ gave little weight to Dr. Jones' 2006 determination that plaintiff could not work, finding that the opinion related "specifically to her job and duties as a nurse assistant" and Dr. Jones "did not address her general ability to perform in the workplace." Tr. 30. However, on multiple occasions, Dr. Jones addressed plaintiff's general ability to work. He indicated that there was "no way" plaintiff could work and that she was "in no condition to be able to work." Tr. 582–83, 589–90. The ALJ also found that, in September 2006, Dr. Jones observed that plaintiff was "doing well with only 'slightly decreased range of motion' in the neck and normal upper extremity strength." Tr. 30–31 (citing Tr. 583). The ALJ mischaracterized Dr. Jones' opinion. Although Dr. Jones determined that as a result of a "stellate ganglion block" plaintiff was "doing better" and that her pain was "decreasing," he still ultimately concluded that plaintiff was "not able to work at [that] point." Tr. 583. Dr. Jones indicated that plaintiff was still suffering from a cervical radiculopathy and that the injuries to her shoulder and back as a result of the car accident had not fully healed. Furthermore, Dr. Jones subsequently reported that the effects of the stellate ganglion block wore off after about one month and plaintiff subsequently had increasing pain in the neck and shoulder. At that time, Dr. Jones again determined that plaintiff could not work. Dr. Jones

reviewed plaintiff's status on a regular basis and each time he concluded that plaintiff was not capable of working due to her impairments. Therefore, the ALJ improperly rejected Dr. Jones' 2006 opinion.

The ALJ also gave little weight to Dr. Jones' 2014 check-box form, finding that he provided no support or explanation for such "excessive restrictions." Tr. 31. An ALJ may permissibly reject check-box forms that do not contain any explanation of the bases of their conclusions. *Molina*, 674 F.3d at 1111. Dr. Jones was plaintiff's primary care provider and had been treating her for 14 years. He explained that his opinion was based on his extensive treating relationship with the plaintiff and plaintiff's additional treatment history. Dr. Jones also noted that he based his opinion on the numerous doctors' visits and hospitalizations that failed to yield improvement regarding plaintiff's gastrointestinal disorders. Accordingly, it was error for the ALJ to reject the check-box form. *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017).

The ALJ additionally found that the restrictions alleged by Dr. Jones were not supported by his course of treatment or the record as a whole. Dr. Jones opined that plaintiff would miss more than two days of work per month due to abdominal pain and incontinence. His opinion is supported by the medical record which demonstrated chronic abdominal pain, diarrhea, and bowel incontinence.[4]

The ALJ also impugned Dr. Jones' opinion that plaintiff could not climb stairs, finding the record reflected that plaintiff climbed stairs daily. However, the ALJ cited no evidence to support the finding. The Commissioner argues that "the record shows she was living in an upstairs apartment, as [plaintiff's] food was in the refrigerator" located in the upstairs apartment. Def.'s

---

[4] The Commissioner cite three instances in which plaintiff's bowel function appeared to be normal; however, the overwhelming weight of the evidence supports Dr. Jones' conclusions. The Commissioner may not merely cherry-pick isolated inconsistencies with the objective medical record to contradict a doctor's opinion. *See Garrison*, 759 F.3d at 1017.

Brief at 17 (citing Tr. 2034). Despite plaintiff's contrary arguments, there was evidence that plaintiff kept her food in the refrigerator. *See* Tr. 2034. ("When [plaintiff's] sister and [plaintiff] went to the apartment late in the day to get [plaintiff's] food out of the refrigerator...."). Although it appears that plaintiff briefly stayed at the apartment, she only agreed to live in an upstairs apartment because there was an urgent need to find her a place to live. *See* Tr. 2034 (noting that plaintiff stayed at the house despite the presence of mold and asbestos and notwithstanding warnings that the apartment was in a neighborhood "known for high drug use and high crime rate"). Plaintiff's treating provider noted that getting up and down the stairs presented a problem for plaintiff, and it was determined that such a living arrangement would be unsustainable and plaintiff would have to move into a unit on the bottom floor. The fact that plaintiff's difficulty climbing stairs prevented her from living in an upstairs apartment is consistent with Dr. Jones' conclusions. Accordingly, the ALJ improperly rejected Dr. Jones' opinion.

B.     *Treating Physicians Matthew Shapiro, M.D. and Peter Kosek, M.D.*

The ALJ failed to address the opinions of Dr. Shapiro and Dr. Kosek. The ALJ is required to account for every medical opinion in the record. 20 C.F.R. § 404.1527(c). In failing to address the opinions of Dr. Shapiro and Dr. Kosek she effectively rejected them. *Smolen*, 80 F.3d at 1282; *Garrison*, 759 F.3d at 1012–13. The ALJ did not provide any reason for rejecting either opinion; therefore, both opinions were improperly rejected.

The Commissioner argues that plaintiff waived challenges to the ALJ's rejection of both Dr. Shapiro's and Dr. Kosek's medical opinions because she failed to raise the challenges to the Appeals Council. As discussed previously, the Commissioner fails to cite case law that stands for the proposition that such arguments are waived if not raised to the Appeals Council. Absent such precedent, I will not deem the arguments waived.

The Commissioner also alleges that rejecting the opinions of Dr. Shapiro and Dr. Kosek

was a harmless error because "Dr. Shapiro's indication that plaintiff had a 'high-level of disability' [and] Dr. Kosek's advisements to 'remain off work' for a particular period of time are not entitled to special significance." Def.'s Brief at 18 (citing Tr. 437, 749; 20 C.F.R. § 404.1527(d); *id.* § 416.927(d)). The regulations provide that a "statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the agency] will determine that [the claimant is] disabled." 20 C.F.R. § 404.1527(d); *id.* § 416.927(d)). However, the fact that the ALJ was not *required* to accept the doctors' conclusions does not mean that she was free to completely ignore their medical opinions without addressing them. *See* 20 C.F.R. § 404.1527(c). Furthermore, the Commissioner's intimation that the opinions of Dr. Shapiro and Dr. Kosek were conclusory is not supported by the record. The opinions of both Dr. Shapiro and Dr. Kosek were far more detailed and comprehensive than the Commissioner alleges.

Dr. Shapiro treated plaintiff numerous times over a period of at least four years. Dr. Shapiro observed that plaintiff had "absolutely catastrophic and uncontrollable pain in her left shoulder" and that plaintiff "scream[ed] in pain" when testing the rotation of her left shoulder. Tr. 437, 441. In his treatment notes, Dr. Shapiro explained that plaintiff "is really in a desperate situation. Her pain is severe, and intolerable. It is almost causing her to be despondent and I do not see that there are any surgical solutions for this at the present time." Tr. 437.

Dr. Kosek treated plaintiff over the course of at least six years. In 2006, Dr. Kosek noted that plaintiff had regional pain with "tight fibrous bands and tender trigger points" many of which have "existed [for] over 3 months and have not responded well to anti-inflammatory medications, bed rest and minimally to physical therapy." Tr. 777. Dr. Kosek also reported that in the past year plaintiff had been taken to the ER twice for pain complaints. In 2007, Dr. Kosek determined that plaintiff's neuropathic arm pain was recurring and it was spreading to her thigh. He also noted that plaintiff's pain always returned despite physical therapy. Throughout her treatment history, Dr.

Kosek repeatedly rated plaintiff's physical functioning as 20 out of 100, or lower. Accordingly, the ALJ improperly rejected the medical opinions of Dr. Shapiro and Dr. Kosek.

C.  *Treating Qualified Mental Health Practitioner Paula Luginbuhl, Ph.D.*

Dr. Luginbuhl reported that plaintiff suffers from depression, suicidality, self-harm, flashbacks, difficulty concentrating, and impaired memory. Dr. Luginbuhl determined that plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods, finding that plaintiff could only sustain her attention for 30-60 minutes. Additionally, Dr. Luginbuhl concluded that plaintiff was markedly limited in her ability to "maintain regular attendance" and "complete a normal workday and workweek without interruptions from psychologically based symptoms[.]" Tr. 1909.

Although both parties applied the "acceptable medical source" standard to the ALJ's treatment of Dr. Luginbuhl's opinion, a careful review of the record revealed that Dr. Luginbuhl was in fact a Qualified Mental Health Professional, which is not considered an "acceptable medical source." Tr. 1815, 1823; 20 C.F.R. § 404.1513(d) (2013); *Molina*, 674 F.3d at 1111; *Moon*, 139 F. Supp. 3d at 1222. As such, Dr. Luginbuhl was an "other source" and the ALJ only needed to give germane reasons for discounting her opinion. *Molina*, 674 F.3d at 1111.

The ALJ gave little weight to Dr. Luginbuhl's opinion because she found that it was internally inconsistent, largely based on plaintiff's self-reports, and the treating relationship was short. The ALJ found Dr. Luginbuhl's determination that plaintiff had moderate limitations in social functioning inconsistent with her finding that plaintiff had no limitations in her ability to interact with others or to maintain socially appropriate behavior. Dr. Luginbuhl explained that plaintiff's moderate limitations in social functioning stemmed from her difficulty trusting others due to trauma and her limited social support. The findings on social functioning are not inconsistent because plaintiff's small social circle and inability to trust have little to no bearing on

her ability to "interact appropriately with the general public" or "maintain socially appropriate behavior." Tr. 1909.

The ALJ additionally found Dr. Luginbuhl's assessment of marked limitations in concentration, persistence, and pace as well as marked limitations in the ability to complete a normal workday or workweek inconsistent with her finding that plaintiff had no limitations in ability to sustain an ordinary routine without special supervision. However, Dr. Luginbuhl did not conclude that plaintiff had *no limitations* in her ability to sustain an ordinary routine without special supervision; rather, she determined that she did not have *evidence* of such a limitation. Dr. Luginbuhl was able to find marked limitations in the other categories based on specific observations made by the Options Counseling and Family Services ("OCFS") team about plaintiff's concentration, punctuality, and regular attendance. Accordingly, this purported inconsistency was not a proper reason to reject Dr. Luginbuhl's opinion.

Moreover, it was improper to reject Dr. Luginbuhl's opinion based on the fact that she only examined plaintiff five times, considering that the ALJ gave great weight to the consulting psychologists who never examined plaintiff. Notably, the Commissioner does not argue that this reason should be upheld. Moreover, a review of the record reveals Dr. Luginbuhl worked as part of the team at OCFS where plaintiff had been treated for over a year and the other counselors and therapists who had worked with plaintiff shared information with Dr. Luginbuhl.

The Commissioner argues that if a treating provider's opinion is based to a large extent on plaintiff's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ can discount the treating provider's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). However, the Ninth Circuit has recently held that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). In *Buck*, the Court held that a

Page 23 – OPINION AND ORDER

clinical interview and a mental status evaluation conducted by the psychiatrist provided sufficient objective measures to support the provider's opinion. Here, Dr. Luginbuhl conducted clinical interviews on multiple occasions. Therapists at OCFS also conducted multiple mental status evaluations to assess plaintiff's suicide risk. Furthermore, when plaintiff initiated care at OCFS, a thorough mental health assessment was conducted by QMHP Topaz, and Dr. Luginbuhl relied on those findings in her report. Therefore, Dr. Luginbuhl's partial reliance on plaintiff's self-reports was not a proper reason for rejecting her medical opinion.

### D. *Treating Qualified Mental Health Associate Teresa Coppola, M.A.*

As a therapist, Ms. Coppola was an "other source" rather than an "acceptable medical source." SSR 06-03p. Therefore, the ALJ could reject Ms. Coppola's opinion with specific, germane reasons. The ALJ gave little weight to Ms. Coppola's opinion because she found that Ms. Coppola's determination that plaintiff suffered from confusion, memory lapse, and difficulty communicating when under stress was not supported by the treatment notes. Contrary to the ALJ's assertion, Ms. Coppola's treatment notes contain several references to plaintiff's difficulty remembering her various appointments. Additionally, plaintiff reported to Ms. Coppola that she was having memory lapses and "stated that her memory [was] getting worse." Tr. 1860. Ms. Coppola also noted instances of plaintiff being confused. However, the ALJ's error was harmless because she also relied on the fact that Ms. Coppola's opinion provided no functional limitations, which constitutes a germane reason for giving little weight to her opinion.

### III. *CRPS Step Two Determination*

Plaintiff also argues that the ALJ erred because she did not find plaintiff's CRPS to be a "severe" impairment at step two of the sequential analysis. At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c); *id.* § 416.920(c). "An

impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen,* 80 F.3d at 1290 (quoting SSR 85-28).

The Commissioner argues that plaintiff waived any challenge to the ALJ's step two determination because she failed to raise the challenge to the Appeals Council. As discussed previously, the Commissioner does not cite case law that stands for such a proposition, and absent such precedent I will not deem the argument waived.

The Commissioner also argues that plaintiff's claim is waived because she did not "solicit any specific testimony regarding regional pain syndrome at the hearing." Def.'s Brief at 4. However, the Commissioner fails to cite any statute, regulation, or case law to support the assertion that plaintiff was required to do so. The Commissioner's argument is particularly unpersuasive considering that regardless of the testimony offered by plaintiff, the ALJ had a "special duty to fully and fairly develop the record." *Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014) (citations omitted).

Dr. Kosek diagnosed plaintiff with CRPS and treated her with nerve block injections. Dr. Keiper noted that plaintiff was unable to rotate her shoulder without "severe pain." Tr. 362. Plaintiff reported that she kept her shoulder immobile most of the time because any movement caused pain. Dr. Jones observed that "[t]here is no way [plaintiff] can be working at this point, she is in too much pain." Tr. 590. As such plaintiff's CRPS is more than just a "slight abnormality" with "no more than a minimal effect" on her ability to work. *Smolen,* 80 F.3d at 1290 (internal quotations omitted). Accordingly, the ALJ erred in his finding that plaintiff's CRPS was not severe.

The Commissioner argues that any error in failing to find plaintiff's CRPS to be severe was harmless, asserting that as long as the ALJ found at least one impairment to be severe at step two, then failure to find another impairment to be severe is only harmful if the evidence establishes

limitations beyond those already included in the RFC. Def.'s Brief at 4 (citing *Hoopai v. Astrue*, 499 F.3d 1071, 1076–77 (9th Cir. 2007)). However, as plaintiff noted, "[t]he RFC fails to account for limitations in [p]laintiff's ability to lift, carry, push, and pull, sit, stand, and walk secondary to CRPS." Pl.'s Reply Brief at 4. The ALJ did limit plaintiff to lifting twenty pounds occasionally and ten pounds frequently. However, Dr. Jones concluded that plaintiff's chronic pain resulted in stricter limitations, concluding that she could only carry five pounds occasionally and was unable to lift anything frequently. Furthermore, the ALJ did not include any pushing or pulling limitations in the RFC, whereas Dr. Jones noted that, due to chronic pain, plaintiff was limited with regard to pushing and pulling.

The Commissioner further argues that any error was harmless because despite failing to consider plaintiff's CRPS, the ALJ did consider plaintiff's complaints of pain in her arm and shoulder. But plaintiff's CRPS pain was not merely limited to her arm and shoulder, the medical record established that it radiated into her neck, back, and legs. The Commissioner also asserts that plaintiff's CRPS was managed as of 2008. Although Dr. Kosek did note, in 2008, that plaintiff's CRPS was managed through the use of a spinal stimulator, plaintiff continued to report pain in her neck, shoulder, back, arm, and leg. Accordingly, the ALJ's error was not harmless.

IV.    *Type of Remand*

The Ninth Circuit has developed a three-step process to determine whether a Social Security appeal should be remanded for further proceedings or for an immediate award of benefits. At step one, the reviewing court must determine whether the ALJ made a harmful legal error, such as failing to provide legally sufficient reasons for rejecting evidence. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). At step two, the court reviews the record as a whole to determine whether the record is fully developed and free from conflicts, with all essential factual issues resolved. *Id.* Step two is the most important step because "the decision of whether to remand for

further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citation omitted). If the record is fully developed, the court proceeds to step three and considers "whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (citations omitted). If the ALJ would be required to make such a finding, the court has discretion to remand for an immediate award of benefits. *Id.* Even when all three steps are satisfied, however, the court may remand for further proceedings if the record as a whole "creates serious doubt as to whether a claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 408 (citation and internal quotation marks omitted).

Here, the ALJ harmfully erred in rejecting the medical opinions of Dr. Jones, Dr. Kosek, Dr. Shapiro, and Dr. Luginbuhl. Moreover, the record is fully developed. Although the Commissioner alleges that there are inconsistencies to be resolved, she does not specifically identify any. The four improperly discredited opinions are consistent with one another and with the record as a whole. The only outlier opinions with respect to plaintiff's limitations come from agency reviewing physicians who never examined or even observed plaintiff. Additionally, Dr. Jones expressly opined on multiple occasions that plaintiff is disabled and incapable of work at the substantial gainful activity level. Furthermore, Dr. Jones opined that plaintiff would miss more than two days per month due to her "chronic abdominal pain and fecal incontinence." Tr. 1173. The VE testified that a person who would miss two or more days per month would be precluded from gainful employment.

Thus, if Dr. Jones' opinion were credited as true on remand, the ALJ would be required to find plaintiff disabled. Put simply, the record clearly demonstrates that plaintiff's chronic abdominal pain, diarrhea, and incontinence preclude her from working. The record leaves no serious doubt that plaintiff is, in fact, disabled within the meaning of the Act.

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED for an immediate award of benefits.

IT IS SO ORDERED

Dated this 2ⁿᵈ day of ~~December~~ January 2018

_Ann Aiken_
Ann Aiken
United States District Judge